PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JESSICA ANN WILSON,           )
                              )      CASE NO.  4:22CV1811
          Plaintiff,          )
                              )      JUDGE BENITA Y. PEARSON
     v.                       )
                              )
CORECIVIC INC., *etc.*, *et al.*,    )      **MEMORANDUM OF OPINION**
                              )      **AND ORDER**
          Defendants.         )      [Resolving ECF No. 74]


Pending is Defendants CoreCivic, Inc. ("CoreCivic") dba Northeast Ohio Correctional

Center ("NEOCC") and David Bobby's ("Warden Bobby") Motion for Summary Judgment (ECF

No. 74).  The Court has been advised, having reviewed the record, the parties' briefs, and the

applicable law.  For the reasons that follow, the motion is granted.

### I.  Stipulated Facts

The stipulated facts[1] are as follows:

1.  Plaintiff Jessica Ann Wilson was a United States Marshals Service ("USMS")

detainee housed at CoreCivic's NEOCC during times relevant to her First Amended Complaint

(ECF No. 19).

2.  CoreCivic owns and operates NEOCC.

3. Bobby was the Warden of NEOCC at the time of Plaintiff's detention at NEOCC.

---

[1] *See* Notice of Stipulations Regarding Uncontested Facts (ECF No. 75); *see also*
Notice of Stipulations Regarding Uncontested Facts For Use at Trial (ECF No. 84)

(4:22CV1811)

4. On March 22, 2022, a male detainee, identified as detainee Glenn, entered the female USMS detainee pod.

5. Detainee Glenn entered Plaintiff's cell.

6. Plaintiff and another female detainee entered Plaintiff's cell where detainee Glenn was located.

7. Plaintiff remained in her cell with detainee Glenn and another female detainee, Angel Thomas, for several minutes.

8. Plaintiff was transferred to Mahoning County Jail on March 24, 2022 and then Butler County Jail on March 25, 2022.

## II. Background

In October 2022, Plaintiff filed a six-count Complaint (ECF No. 1) against CoreCivic and Warden Bobby (hereinafter "Defendants"). As stipulated, Plaintiff was a federal pretrial detainee housed at NEOCC, which is owned and operated by CoreCivic. CoreCivic provides detention services to detainees of the USMS through a detention service contract.

Plaintiff alleges that on or about March 22, 2022, she was sexually assaulted at NEOCC by Glenn. According to Plaintiff, Glenn refused to leave Plaintiff's cell and remained there for approximately 45 minutes before taking her to a secluded area of the pod of cells reserved for female inmates. Once in the secluded area with Plaintiff, Glenn allegedly took down his pants exposing his genitalia and demanded oral sex from her. Plaintiff asserts that she observed that he had a potentially lethal weapon, a handmade shank, hanging from his waist. Plaintiff alleges she began to perform oral sex on Glenn out of fear, intimidation, and the threat of physical violence.

2

(4:22CV1811)

Glenn, known to Plaintiff or believed to be Davonte Glenn, had been given trustee status and was given access to the pod ostensibly to collect the dinner trays. The assault allegedly occurred without provocation and caused Plaintiff physical injuries in and about her mouth, as well as mental and emotional pain and suffering. According to Plaintiff, she required medical treatment for the injuries sustained as a result of the assault, but she was deprived of the right to adequate medical evaluation and care when incarcerated, including rape counseling.

Glenn, a male detainee, gained entry to the female pod with the assistance of female detainees – not with the assistance, knowledge, or prediction of Defendants or NEOCC staff. *See* Attachments D-Q to Decl. of Barb Von Blanckensee (ECF No. ECF No. 87-7); Blanckensee Decl. (ECF No. 74-15 at PageID #: 849, ¶ 18); Blanckensee Expert Witness Report (ECF No. 74-15 at PageID #: 875); Exhibit 18 - Flash Drive Containing an Archived Milestone Video. Glenn attempted to evade detection by crouching under the control room window and remained out of view to enter and remain in the pod. *See* Blanckensee Decl. (ECF No. 74-15 at PageID #: 849, ¶ 19). Female detainees also covered the window to Plaintiff's cell and turned out the light to further conceal Glenn's presence. *See* Blanckensee Decl. (ECF No. 74-15 at PageID #: 849, ¶ 19; PageID #: 849-51, ¶¶ 21-30). No detainees used their in-cell call buttons or otherwise alerted the officer in the control room or any other officer entering or exiting the pod of the Glenn's presence. *See* Exhibit 18; Decl. of Warden Douglas Fender (ECF No. 74-16) at PageID #: 892, ¶ 44.

In April 2023, Plaintiff filed a First Amended Complaint (ECF No. 19) with leave of Court. *See* Order (ECF No. 18). Count I alleges "violation of 42 U.S.C. § 1983, the 8th

3

(4:22CV1811)

Amendment of the United States Constitution, civil rights violations, constitutional torts, and

*Bivens* action."  Count II alleges  "42 U.S.C. § 1983 violations."  Count III alleges "violation of

42 U.S.C. § 1983 and the 14th Amendment of the United States Constitution."  Count IV

alleges"negligence/gross negligence."  Count V alleges"willful wanton and reckless conduct."

Count VI is for "intentional infliction of emotional distress."

In October 2023, the Court granted Defendants' Motion for [Partial] Judgment on the

Pleadings (ECF No. 30).  The Court dismissed Plaintiff's alleged violations of  § 1983 and

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)

asserted in the First Amended Complaint (ECF No. 19).  *See* Memorandum of Opinion and

Order (ECF No. 72) at PageID #: 478-83.  Therefore, the remaining portions of the First

Amended Complaint (ECF No. 19) allege only the claims in Counts IV, V, and VI against

Defendants.

### III.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and

disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

*see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  Fed. R. Civ. P. 56(c)(1)(A)

requires a party requesting summary judgment in its favor or an opposing party "to go beyond the

pleadings" and argument, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and cite to

"particular parts of materials in the record, including depositions, documents, electronically

stored information, affidavits or declarations, stipulations (including those made for purposes of

4

(4:22CV1811)

the motion only), admissions, interrogatory answers, or other materials." The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the

(4:22CV1811)

non-moving party is entitled to a verdict.  *Id.*  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment.  *Id.* (citing *Anderson*, 477 U.S. at 252).

"It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment."  *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997); *see also Guarino*, 980 F.2d at 410 ("Neither the trial nor the appellate court . . . will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party."); Fed. R. Civ. P. 56(c)(1).  "[T]he court is not required to search the record for some piece of evidence which might stave off summary judgment."  *Id.*  It is also well settled that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

The 2010 revisions to Fed. R. Civ. P. 56, clarify that a party who does not have the trial burden of production may only make a showing that the non-movant cannot produce admissible evidence.  It is then up to the non-movant to point to some specific evidence showing a genuine

(4:22CV1811)

issue for trial.  *Kassouf v. U.S. Liab. Co.*, No. 1:14CV2656, 2015 WL 5542530, at *3 (N.D. Ohio Sept. 18, 2015).[2]  In 2010, Rule 56 was revised and Rule 56(c)(1)(B) was added in explicit recognition that the movant "need not always point to specific record materials . . . a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact" without relying upon any citation to particular parts of materials in the record.  2010 Amendment Advisory Committee Notes.

## IV.  Analysis

Although what exactly transpired between 1:12 p.m. and 1:17 p.m. on March 22, 2022 inside Plaintiff's cell is disputed, the factual dispute is not material and CoreCivic and Bobby (hereinafter "Defendants") are entitled to entry of judgment on Counts IV, V, and VI because Plaintiff has failed to carry her burden of proof relating to essential elements of each of her remaining state law claims.  Plaintiff argues instead that the Court should excuse her litigation decisions and presume that such evidence exists as a matter of law or that she should be permitted to attempt to elicit such testimony from witnesses at trial.  *See* ECF No. 102 at PageID #: 2739.

### A.     Intentional Infliction of Emotional Distress ("IIED") (Count VI)

Defendants correctly argue Plaintiff fails to identify any evidence that they engaged in extreme and outrageous conduct with an intentional/reckless state of mind.  Plaintiff does not

---

[2]  Plaintiff misstates the standard for summary judgment in federal court, relying instead on Ohio R. Civ. P. 56 and *Dresher v. Burt*, 75 Ohio St.3d 280 (1996).  *See* Plaintiff's Memorandum in Opposition (ECF No. 102) at PageID #: 2734-35.

(4:22CV1811)

produce evidence of any direct conduct by CoreCivic or Warden Bobby that is extreme and

outrageous and intended to cause, or in reckless disregard of a risk to Plaintiff of causing, severe

emotional distress.  While Plaintiff posits many questions regarding policy violations and argues

a practice and custom of failures which is "indicative of indifference," ECF No. 102 at PageID #:

2743, she provides no evidence of any such policy noncompliance, let alone of any practice and

custom that caused the alleged incident.  Plaintiff's argument of actual or constructive notice is

likewise belied by Defendants' uncontroverted evidence of compliance with industry standards,

at the time of the alleged incident, as to facility operations, as evidenced by independent

third-party audits, *see* NEOCC Prison Rape Elimination Act ("PREA") audit conducted between

March 22-24, 2022 (ECF No. 74-2) and American Correctional Association ("ACA")

accreditation process in June 2022, and policies, *see* CoreCivic's Policy 14-2 Sexual Abuse

Prevention and Response (ECF No. 74-6), and procedures in place at NEOCC at the time of the

incident.  That a security breach occurred on March 22, 2022, by which Glenn was able to access

Plaintiff's housing unit, cannot be used to infer the existence of reckless conduct because Ohio

law rejects the imposition of strict liability on correctional officials for conduct by detainees as

detention officials are not guarantors of inmate safety.  In other words, correctional and detention

officials are not strictly liable for all conduct by other detainees and are not guarantors of inmate

safety.  *See Anderson v. Jones*, 440 F. Supp.3d 819, 843 (S.D. Ohio 2020) (stating that even

though the plaintiff suffered traumatic injuries due to a prison attack, "the fact remains that

neither corrections officers, nor those who hire and train them, are insurers of inmate safety in

prison environments").

(4:22CV1811)

Plaintiff must establish four elements to state a claim for intentional infliction of

emotional distress:

> 1) that the actor either intended to cause emotional distress or knew or should
> have known that actions taken would result in serious emotional distress to the
> plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go
> "beyond all possible bounds of decency" and was such that it can be considered as
> "utterly intolerable in a civilized community"; 3) that the actor's actions were the
> proximate cause of plaintiff's psychic injury; and 4) that the mental anguish
> suffered by plaintiff is serious and of a nature that "no reasonable man could be
> expected to endure it."

*Gehrisch v. Chubb Grp. of Ins. Co.s*, No. 1:14CV2439, 2015 WL 4067201, at *6 (N.D. Ohio

July 2, 2015), *aff'd*, 645 Fed.Appx. 488 (6th Cir. 2016) (quoting *Tschantz v. Ferguson*, 97 Ohio

App.3d 693, 702 (1994)) (citations omitted).  "Whether conduct is 'extreme and outrageous' is

initially a question of law for the court."  *See v. Cleveland Clinic Found.*, 222 F. Supp.3d 569,

576 (N.D. Ohio 2016) (quoting *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d

40, 62 (2009)).  Plaintiff must establish that Defendants intended to cause Plaintiff severe

emotional distress or acted in reckless disregard to a serious risk of causing Plaintiff severe

emotional distress.  *See Yeager v. Loc. Union 20*, 6 Ohio St.3d 369, 374 (1983), *abrogated on

other grounds by Welling v. Weinfeld*, 113 Ohio St.3d 464 (2007).

"Under Ohio law, '[r]eckless conduct is characterized by the conscious disregard of or

indifference to a known or obvious risk of harm to another that is unreasonable under the

circumstances and is substantially greater than negligent conduct.' "  *T.W. v. Finneytown Loc.

Sch. Dist.*, No. 1:18-cv-668, 2021 WL 5322017, at *6 (S.D. Ohio Nov. 16, 2021) (quoting

*Anderson v. Massillon*, 134 Ohio St.3d 380, 388, ¶ 34 (2012)).  While recklessness can often be

used to infer intent, it still requires evidence of defendants' knowledge and conscious

(4:22CV1811)

decision-making.  Specifically, evidence that a defendant was aware of, or should have been aware of, and chose to disregard an unreasonable risk of harm is necessary.  In the present case, there is no evidence in the record of any direct conduct of CoreCivic or Warden Bobby that is extreme and outrageous and intended to cause or in reckless disregard of a risk to Plaintiff causing severe emotional distress.  The undisputed facts are that NEOCC's staffing, training, and security practices were validated during the PREA audit (ECF No. 74-2), and the ACA accreditation process.  Both the PREA audit and ACA accreditation are conducted by independent third parties.  *See* Blanckensee Decl. (ECF No. 74-15 at PageID #: 854, ¶ 51); ECF No. 74-16 at PageID #: 891, ¶¶ 40-41.  NEOCC complied with applicable correctional standards. *See* ECF No. ECF No. 87-7; Blanckensee Decl. (ECF No. 74-15 at PageID #: 853-54, ¶¶ 50-51); ECF No. 74-16 at PageID #: 891, ¶¶ 40-43.  It is also undisputed that CoreCivic and its employees do not want or condone sexual contact between detainees or threats of violence to occur.  Policy 14-2 Sexual Abuse Prevention and Response (ECF No. 74-6), CoreCivic's longstanding zero-tolerance policy against sexual harassment or abuse at NEOCC, includes comprehensive education of inmates/detainees; education, training, and background clearance of NEOCC security staff; a comprehensive network of internal and third-party resources for detection, reporting, and investigation of sexual harassment or abuse; and, supportive services for victims.  *See* ECF No. 74-16 at PageID #: 888-91, ¶¶ 22-39.

Not only is there no evidence that any officer intentionally allowed Glenn into the pod housing female detainees or was aware of his presence during the 24 minutes he was in the area, but the undisputed evidence establishes that staff were present in the area and affirmatively

10

(4:22CV1811)

secured the entrance to the pod several times.  From this evidence, there can be no finding of

conscious disregard or reckless indifference to compliance with established security practices.

*See* ECF No. 87-7; Blanckensee Decl. (ECF No. 74-15 at PageID #: 849-51, ¶¶ 21-30).  Nor is

there evidence that it was foreseeable to any officer that Glenn would gain access to the pod.

Indeed, according to Plaintiff herself, this was an isolated incident as she testified she was

"shocked" to see a male in her pod and had "never" seen one in there before.  Deposition of

Plaintiff (ECF No. 87-5) at PageID #: 1370:17-24.  To the extent that any act or omissions were

extreme and outrageous, those were the acts or omissions of Detainee Glenn and other female

detainees who acted as intervening instrumentalities outside the control of Defendants.

While Plaintiff poses numerous questions regarding what theoretical policy violations

occurred on the day of the incident, *see* ECF No. 102 at PageID #: 2738, despite the opportunity

to conduct discovery and depose NEOCC employees, fails to identify any evidence of any policy

violation.  For example, Plaintiff makes an unsubstantiated argument that a failure to search the

pod immediately upon finding the door to the pod propped open was extreme and outrageous

conduct, but fails to identify any evidence of a correctional standard or other authority that such a

search is required by the applicable standard of care, let alone that the failure to do so is extreme

and outrageous.  While Plaintiff claims the existence of a practice and custom of failures by

unidentified facility staff that is "indicative of indifference to the safety of the inmates," ECF No.

102 at PageID #: 2743, she provides neither evidence nor any citation to the record, for such a

practice or custom.  *See Anderson*, 440 F. Supp.3d at 842-43 (granting summary judgment to

Sheriff on IIED claim when plaintiff failed to put forth evidence of a pattern of violations giving

11

(4:22CV1811)

notice or constructive notice to defendant).  Plaintiff fails to carry her burden to demonstrate that

any of the alleged but unsubstantiated conduct amounts to conduct completely intolerable in a

civilized society and substantially greater than negligent conduct.  *See Strausbaugh v. Ohio Dept.*

*of Transp.*, 150 Ohio App.3d 438 (2002) (affirming trial court judgment that Plaintiff had failed

to satisfy his burden of proof on his IIED claim); *T.W.*, 2021 WL 5322017, at *7.

Plaintiff offers the unsworn report of her expert, John Hurton, Jr. (ECF No. 102-3),[3]

whose opinions are based only on his review of:  the Complaint (ECF No. 1) and the March 20,

2023 proposed Amended Complaint (ECF No.14-1); the NEOCC Incident Report identified as

Incident Report No. 2022-1901-233-PREA (ECF No. 74-23); and, the Youngstown Police

Department Officer Report for for Incident 22Y012356 (ECF No. 74-8).  *See* ECF No. 102-3 at

PageID #: 2759-60, ¶ 6.  It is noted that all of these documents were prepared in response to and

after the alleged incident was reported on March 23, 2022.[4]  There is no evidence that CoreCivic

---

[3]  Expert reports are inadmissible at trial.  *Filous v. Dunbar*, No. 1:18CV0626,
2019 WL 2089109, at *12 (N.D. Ohio May 7, 2019) (citing *Shaffer v. CSX Transp., Inc.*,
462 Fed.Appx. 597 (6th Cir. 2012) (Unsworn expert reports are hearsay and may not be
considered on a motion for summary judgment.)).

[4]  Hurton alludes to prior incidents, but does not identify a single incident in his
report to support his conclusion of a practice and custom of insufficient staffing and
security at NEOCC that caused Glenn to gain access to the pod.  *See* ECF No. 102-3 at
PageID #: 2764-65.  His statement that NEOCC "had a practice and custom of allowing
male inmates to enter the female housing areas out of the view of correctional staff," ECF
No. 102-3 at PageID #: 2763, ¶ 19, is without basis in any document he reviewed and at
best merely restates legal conclusions from the Complaint (ECF No. 1) that he is not
qualified to offer. That statement is also contradicted by Plaintiff's sworn testimony in
which she states under oath that she had "never [n]ever" seen a male inmate in her pod
before and was surprised to see Glenn in the pod.  *See* ECF No. 87-5 at PageID #:
1370:21-24.

(4:22CV1811)

or Warden Bobby were aware of any conditions in the female pod at the time of the security breach making it foreseeable that Glenn would gain access to the pod, including the security breach itself, and thereafter failed to intervene. Plaintiff's assertion that the breach itself is proof of intentional or reckless extreme and outrageous conduct requires an improper application of strict liability. *See Anderson*, 440 F. Supp.3d at 843 (stating that even though plaintiff suffered traumatic injuries due to a prison attack, "the fact remains that neither corrections officers, nor those who hire and train them, are insurers of inmate safety in prison environments"); *see also Ford v. Alexander*, No. 5:11CV0575, 2013 WL 978209, at *11 (N.D. Ohio Feb. 22, 2013) (citing *Dale v. Poston*, 548 F.3d 563, 568 (7th Cir. 2008)), *report and recommendation adopted*, 2013 WL 978253 (N.D. Ohio March 12, 2013) (Pearson, J.).

Plaintiff has failed to carry her burden to demonstrate that conduct by Defendants was substantially greater than negligent conduct and amounts to intentional or reckless conduct deemed completely intolerable in a civilized society in order to sustain her IIED claim. Therefore, Defendants are entitled to summary judgment on Count VI.

**B.     Punitive Damages (Count V)**

Count V alleges willful wanton and reckless conduct. Punitive damages require a showing of "actual malice," which is "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334 (1987), paragraph one of the syllabus. Plaintiff must provide some evidence of "actual malice" on the part of the CoreCivic and/or Warden Bobby to proceed to trial

13

(4:22CV1811)

on Count V.  "But the actions of a defendant must rise above mere negligence or recklessness to be considered actual malice."  *Parker v. Miller*, No. 2:16-cv-1143, 2017 WL 3642372, *2 (S.D. Ohio Aug. 24, 2017).  It is undisputed that neither CoreCivic nor Warden Bobby directly perpetrated the alleged assault against Plaintiff.  Therefore, Plaintiff's argument as to recklessness alone is insufficient to survive summary judgment.  *Cooley v. Aevum Hotels, LLC*, No. 1:21-cv-789, 2022 WL 3042590, at *4 (S.D. Ohio Aug. 2, 2022) (action which "at best, describes *reckless* behavior – fails to support" conscious disregard for the rights and safety of other persons) (emphasis in original).  Rather, a conscious disregard theory of liability requires evidence that Defendants had *actual* knowledge of the harm to Plaintiff.  *See Malone v. Courtyard by Marriott L.P.*, 74 Ohio St.3d 440, 446 (1996).  There is no evidence in the case at bar that Defendants had knowledge of the threat Glenn posed to Plaintiff.  Moreover, there is no dispute that the subsequent actions of Defendants demonstrate condemnation (not) ratification of any security lapses by NEOCC staff.

Similar to the failures of her speculation relating to possible recklessness and asserted extreme and outrageous conduct with respect to her IIED claim in Count VI, Plaintiff fails to identify any evidence that CoreCivic or Warden Bobby acted with actual malice.  Plaintiff's punitive damages claim in Count V lacks merit, since Defendants also point to specific evidence defeating the second element of a vicarious punitive damages claim wherein Plaintiff cannot establish that any "defendant as principal or master knowingly authorized, participated in, or ratified actions or omissions of any agent or servant that so demonstrate" actual malice.  Ohio Rev. Code § 2315.21(C)(1).  Defendants did not knowingly authorize, participate in, or ratify

14

(4:22CV1811)

Detainee Glenn's actions or his security breach.  There is no dispute that the evidence

demonstrates that CoreCivic followed its policies and took swift action initiating an internal

investigation as well as referring the matter to the FBI, USMS, and Youngstown Police

Department.  *See* ECF No. 87-7; Blanckensee Decl. (ECF No. 74-15 at PageID #: 852, ¶¶ 38-39).

While neither Correctional Officer who was assigned to work in the B pod on March 22, 2022

had any prior disciplinary issues, Defendants placed security staff on administrative leave

pending the investigation and terminated a detention officer at the conclusion of the

investigation, which evidences condemnation (not ratification) of their acts or omissions.  *See*

Blanckensee Decl. (ECF No. 74-15 at PageID #: 853, ¶¶ 46 & 48-49).

##### C.     IIED (Count VI) and Negligence/Gross Negligence (Count IV)

Defendants argue Plaintiff lacks admissible evidence to establish either the existence of

resulting severe emotional distress or proximate cause of the same.  Plaintiff has not proffered

any competent evidence to establish her alleged mental/emotional harm and to causally link such

harm to the alleged incident.  As established by Defendants' expert testimony, *see* Dr. Joseph

Penn Decl. (ECF No. 74-17), because of Plaintiff's own traumatic history, there are multiple

potential causes of Plaintiff's alleged damages, which require expert testimony.  Plaintiff,

however, has no expert witness to establish either her alleged mental/emotional harm or

causation.

"It is for the court to determine whether on the evidence severe emotional distress *can* be

found; it is for the jury to determine whether, on the evidence, it has *in fact* existed." *White v.*

*Bhatt*, 102 N.E.3d 607, 615, ¶ 26 (Ohio App. 5th Dist.2017) (quoting *Cruz v. English Nanny &*

(4:22CV1811)

*Governess School Inc.*, 92 N.E.3d 143, 155, ¶ 51 (Ohio App. 8th Dist. 2017) (emphasis in

original).  "Absence of proof of damages is fatal to a claim of negligence.  *See Bokar v. Lax*, No.

2630-M, 1997 WL 557333, at *4 (Ohio App. 9th Dist. Sept. 3, 1997) (citing *Hanson v. Kynast*,

24 Ohio St.3d 171, 177 (1986); *Pietz v. Toledo Trust Co.*, 63 Ohio App.3d 17, 22, (1989)).

**1.**

Plaintiff concedes that to succeed on her IIED claim she must present evidence of "severe

distress" outside her own testimony.  *See* ECF No. 102 at PageID #: 2740.  She argues that lay

persons can offer proof of the impact of the event on her and offers affidavits from her sister,

Amanda Renee Osborne (ECF No. 102-1), and uncle, Stephen Timothy Corson (ECF No. 102-2).

Although affidavits from "lay witnesses who 'testify as to any marked changes in the emotional

or habitual makeup that they discern in the plaintiff' may suffice," *Wheat v. Chase Bank*, No.

3:11-cv-309, 2014 WL 457588, at *29 (S.D. Ohio Feb. 3, 2014) (quoting *Ford Motor Credit Co.

v. Ryan*, 189 Ohio App.3d 560, 590, ¶ 57 (2010)), the affidavits from Plaintiff's sister and uncle

are insufficient to establish resulting severe emotional distress for several reasons.

Defendants object to the affidavits from Plaintiff's sister and uncle.  They contend

Plaintiff's non-disclosure of the testimony is fatal to her attempt to provide some admissible

evidence that she experienced severe emotional distress.  The Court rejects consideration of ECF

Nos. 102-1 and 102-2 alleging a change in Plaintiff's mental state because neither was disclosed

in accordance with Fed. R. Civ. P. 26(a)(1).  *See Quintanilla v. AK Tube LLC*, 477 F. Supp.2d

828, 836 (N.D. Ohio 2007) (disregarding an affidavit submitted in opposition to summary

judgment for lack of disclosure).  Specifically, Plaintiff failed to disclose her uncle as a witness

16

(4:22CV1811)

during the discovery phase of the case at bar. *See* Supplemental Disclosures of Plaintiff (ECF No. 106-1). Although Plaintiff disclosed her sister as a witness, Plaintiff specifically limited the area that her sister would testify to as "the information Plaintiff disclosed to her immediately after the incident" and there was no disclosure that her sister may provide any lay witness testimony regarding any changes that her sister may have observed in Plaintiff's emotional state. ECF No. 106-1 at PageID #: 2810.

Rule 26(a) requires a party to disclose the names of "each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses." *Premium Balloon Accessories, Inc. v. Creative Balloons Mfg., Inc.*, No. 1:10CV0979, 2013 WL 12130639, at *3 (N.D. Ohio March 22, 2013) (Pearson, J.) (quoting Fed. R. Civ. P. 26(a)(1)(A)). In addition, Rule 26(e) requires a party to supplement its disclosures and responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." *Id.* (quoting Fed. R. Civ. P. 26(e)(1)(A)). Fed. R. Civ. P. 37(c)(1) provides an automatic sanction that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

"Failure to properly characterize and disclose the nature of testifying witnesses cannot be deemed harmless, even if an innocent misunderstanding of the rules of evidence and procedure precipitated the failure." *Johnson v. Knotts*, No. 3:05-cv-138, 2007 WL 2607478, at *7 n. 1 (S.D. Ohio Sept. 5, 2007) (citing *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003)).

(4:22CV1811)

Plaintiff has also not justified her non-disclosure, and permitting these individuals to present testimony at the summary judgment stage seriously prejudices Defendants.  Discovery is closed.  Therefore, Defendants are deprived of the opportunity to depose both witnesses on the subject matter of their affidavits.  "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *TransPro, Inc. v. Leggett & Platt, Inc*., No. 1:02CV2329, 2006 WL 2987724, at *2 (N.D. Ohio Oct. 17, 2006) (quoting *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (internal quotations omitted)).

**2.**

According to Defendants, even if properly disclosed, the Osborne and Corson Affidavits (ECF Nos. 102-1 and 102-2) do not preclude summary judgment on Plaintiff's IIED claim.  Even if the Court were to consider the affidavits, they do not evidence "serious emotional distress" necessary to sustain an IIED claim.  Notwithstanding Plaintiff's argument, Ohio law does not include any presumption of injury in similar cases, but rather requires presentation of supporting evidence of the types Plaintiff lacks.  It remains undisputed that the Plaintiff's history of prior significant traumatic experiences requires that her damages claim be supported by expert opinion testimony.  Because Plaintiff chose not to disclose any such testimony, Defendants are entitled to summary judgment on Counts IV and VI.

The affidavits of Plaintiff's sister and uncle are also insufficient on their face to establish the requisite severe emotional distress to sustain Plaintiff's IIED claim.  Plaintiff's sister declares

18

(4:22CV1811)

that she observed Plaintiff's anxiety has increased substantially since her return home, *see* ECF No. 102-1 at PageID #: 2752, ¶ 10, and she has "lost all zest for life,"  ECF No. 102-1 at PageID #: 2753, ¶ 13.  Plaintiff's uncle states he observes similar symptoms of panic attacks, insomnia, nightmares, and weight loss.  *See* ECF No. 102-2 at PageID #: 2755, ¶ 10.

The emotional distress for an IIED claim must be serious, such that it constitutes " 'emotional injury which is both severe and debilitating[,]' " and goes beyond " 'mere upset or hurt feelings.' "  *Reeves v. Fox Television Network*, 983 F. Supp. 703, 711 (N.D. Ohio 1997) (quoting *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983)).  A trial court may determine whether a complainant has stated a cause of action for tortious emotional distress by ruling whether the emotional injury alleged is serious as a matter of law.  *See Alahverdian v. Grebinski*, No. 3:13-cv-00132, 2014 WL 2048190, at *17 (S.D. Ohio May 19, 2014) (citation omitted).

> . . . a number of courts have rejected specific complaints as not causing severe or debilitating emotional distress. *Id.*, citing, *Gagne*, *supra*. (sleeplessness, withdrawal, and "not the same person she was" is not of sufficient severity); *Jones v. Washington*, 67 Ohio App.3d 176, 586 N.E.2d 228 (Ohio App. 6th Dist.1990) (recurring nightmares did not constitute showing of sufficient psychic injury); *McCarthy v. Cleveland Hts.*, 65 Ohio App.3d 216, 583 N.E.2d 981 (Ohio App. 8th Dist.1989) (depression requiring psychological counseling following son's suicide was not sufficiently severe); *Lynn v. Allied Corp.*, 41 Ohio App.3d 392, 536 N.E.2d 25 (Ohio App. 8th Dist.1987) (distraught and hysterical feelings, crying, and elevated blood pressure not sufficiently serious).

*Id.*  In addition, simple anxiety does not fall within the Ohio Supreme Court's concept of what constitutes a severe emotional injury.  *See Paugh*, 6 Ohio St.3d at 78; *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410-11 (1994); *Dickerson v. Int'l UAW Union*, 98 Ohio App.3d 171, 184-86 (1994) (requiring "substantial proof of the claimed mental disturbance" to establish emotional distress in an IIED claim and noting lack of expert testimony as to causation).  "A

19

(4:22CV1811)

non-exhaustive litany of some examples of serious emotional distress should include

traumatically induced neurosis, psychosis, chronic depression, or phobia." *Paugh*, 6 Ohio St.3d

at 78. Here, the affidavits of Plaintiff's sister and uncle are insufficient to establish "induced

neurosis, psychosis, chronic depression, or phobia."

**3.**

Next, Defendants claim the Court may not presume the existence of either a physical

injury or emotional distress. Plaintiff and Defendants agree that proof of a physical injury is not

necessary to succeed on an IIED claim. While Plaintiff accentuates a cut in her mouth as

evidence of the existence of a physical injury, Plaintiff does not dispute that her NEOCC medical

records contradict such an argument. It is undisputed that during a medical encounter the day

after the alleged assault, Plaintiff did not report any injuries and none were observed. *See*

Plaintiff's NEOCC Medical File (ECF No. 87-1) at PageID #: 1064. Rather, it was more than a

week after the incident before she experienced a sore in her mouth while at the Butler County

Prison, and within 24 hours sought medical attention, which showed that she had cut her gum.

*See* Plaintiff's March 29, 2022 Medical Record From PrimeCare Medical (ECF No. 87-6) at

PageID #: 1436. There simply is no evidence of any physical injury resulting from the encounter

with Glenn.

Plaintiff cites to the Supreme Court of Ohio's ruling in *Brandt v. Pompa*, 171 Ohio St.3d

693 (2022), as supporting her argument that the Court may presume the existence of psychic

injury following an alleged sexual assault. *See* ECF No. 102 at PageID #: 2742 ("Running like a

secondary theme throughout the Ohio Supreme Court's opinion is the implication that sexual

20

(4:22CV1811)

abuse creates emotional damage *per se*.")  That is incorrect.  As the Court of Appeals noted in

*Brandt*:

> The jury watched the videotaped deposition of Brandt's expert, Dr. Patrick
> Yingling, a clinical psychologist, who evaluated Brandt in June 2019.  Dr
> Yingling took a history from Brandt and administered the Minnesota Multiphasic
> Personality Inventory.  In light of her responses to the test and his review of
> medical records and other documents, Dr. Yingling opined that Brandt suffers
> from PTSD as a result of Pompa's sexual abuse.  He further opined that her
> symptoms would continue "with some degree of intensity" for a "significant"
> period of time and that she would benefit from ongoing psychotherapy and
> medications.

*Brandt v. Pompa*, 169 N.E.3d 285, 290, ¶ 17 (2021); *see also Brandt*, 171 Ohio St.3d at 694, ¶ 5

("The jury also heard . . . expert testimony from a clinical psychologist").

In *Brandt*, the Ohio Supreme Court makes clear that its holding applies only to the

"limited class of litigants—people like Brandt who were victimized at a very young age and who

bring civil actions to recover damages from the persons who have been found guilty of those

intentional criminal acts."   In other words, *Brandt* applies when there is proof (not a

presumption) of catastrophic psychological injury.  This renders *Brandt*'s holding regarding Ohio

Rev. Code § 2315.18 not pertinent to the issues in the case at bar.  *Brandt*, 171 Ohio St. 3d 693,

702, ¶ 31.

**4.**

Finally, Defendants maintain Plaintiff lacks necessary expert testimony regarding

causation of her alleged emotional distress.  While expert testimony may not be necessary in all

cases to establish causation of emotional distress, in cases like the case at bar in which there is no

single, concrete incident from which Plaintiff can trace her alleged injury, but rather multiple

(4:22CV1811)

causes of Plaintiff's injuries including events that took place both well before and after the

encounter with Glenn, expert testimony as to causation is required.  *See Kovacic v. Ponstingle,*

*No. 1:05CV2746, 2014 WL 4715859, *4 (N.D. Ohio Sept. 22, 2014); Weems v. City of*

*Columbus, Ohio,* No. 2:05-cv-87, 2006 WL 2640636, at *15 (S.D. Ohio Sept. 13, 2006) (for

claims that emotional distress aggravated existing illnesses, expert testimony is necessary to

show causation because such "a claim involves matters which exceed the capability of a jury of

non-professionals to reasonably understand and evaluate") (citing *Dickerson, supra*; *Grote v. J.S.*

*Mayer & Co., Inc.*, 59 Ohio App.3d 44, 47 (1990); *Gleed v. AT&T Servs., Inc.*, No. 13-12479,

2016 WL 1451532, at *4 (E.D. Mich. April 12, 2016) (opinion testimony regarding the causation

or exacerbation of medical conditions or opinion testimony regarding physical pain or emotional

distress, requires expert testimony).  Otherwise, lay jurors will have difficulty determining to

what extent a plaintiff was harmed by a particular injury.  *See Romine v. St. Joseph Health Sys.,*

*541 Fed.Appx. 614, 619 (6th Cir. 2013); Rodgers v. Fisher Body Div.*, 739 F.2d 1102, 1108 (6th

*Cir. 1984)*.

Plaintiff's attempts to distinguish *Kovacic* based upon the presence of alleged physical

injury, *see* ECF No. 102 at PageID #: 2741, is misplaced.  The facts of the *Kovacic* case did not

turn on whether the plaintiffs suffered a physical injury as the claim was for IIED rather than

negligent infliction of emotional distress.  A contemporaneous physical injury is not necessary to

state a claim for IIED under Ohio law.  *See Yeager*, 6 Ohio St.3d at 374, 453.  Here, like

*Kovacic*, Plaintiff has alleged an IIED claim and therefore must establish that Defendants

(4:22CV1811)

intentionally or recklessly caused Plaintiff serious emotional distress regardless of whether there was a contemporaneous physical injury.

Much like the facts in *Kovacic*, there is no genuine dispute Plaintiff has suffered an unfortunate, traumatic past including sexual assault by a sibling over several years, the loss of a child, the murder of her boyfriend in her home, close familial deaths, and other traumatic events. *See* Attachments A-B to Dr. Penn Decl. (ECF No. 87-8).  Indeed, Plaintiff has a history of complaints of severe depression, including a prior suicide attempt, causing her to seek inpatient care on several occasions.  *See* ECF No. 87-8.  While the subject of inpatient care in 2018 and 2019, she reported suffering from anxiety, depression, sleeplessness, loss of appetite, panic attacks, flashbacks, among other symptoms.  *See* Alternative Community Resource Program Records (ECF No. 89-4) at PageID #: 2567.  In September 2019, Plaintiff was diagnosed with major depressive disorder, anxiety, and post traumatic distress disorder.  *See* ECF No. 89-4 at PageID #: 2575.  After Plaintiff was released from jail in October 2020, she attended a counseling session on November 12, 2020.  *See* ECF No. 89-4 at PageID #: 2587-93.  She reported the same complaints and attributed them to going to jail, the loss of her mother, and other traumatic experiences.  Plaintiff stated she has been experiencing these symptoms for the last 10 years.  *See* ECF No. 89-4 at PageID #: 2587.[5]

---

[5]  Plaintiff's medical records after the incident from NEOCC and Butler County Prison do not demonstrate debilitating distress or any new or worsening symptoms she reported prior to the incident.  *See* Attachment B to Dr. Penn Decl. (ECF No. 87-8) at PageID #: 1512.

23

(4:22CV1811)

Given the extensive history and multiple causes for Plaintiff's emotional state, a lay juror cannot determine whether and to what extent Plaintiff's alleged emotional injuries were caused or exacerbated by the discrete event at NEOCC in March 2022 alleged in the present case.  As such, while Plaintiff may attempt to present properly disclosed lay witnesses to testify to their own observations of Plaintiff's condition and other matters that are within their personal experience, they are not qualified to and may not offer opinion testimony concerning the causation of Plaintiff's mental health diagnosis or the extent of the impact on her medical conditions.  *See Kovacic*, 2014 WL 4715859, at *2; *Fakhoury v. O'Reilly*, No. 16-13323, 2022 WL 909347, at *10 (E.D. Mich. March 28, 2022).  Plaintiff has not identified an expert to testify to such causation and damages and the cutoff date of March 27, 2023 has passed.  *See* Case Management Plan (ECF No. 12) at PageID #: 78, ¶ 10(A).[6]

The undisputed evidence establishes that Plaintiff cannot carry her burden to prove causation and damages, and, therefore, Defendants are entitled to summary judgment on both Plaintiff's claims for IIED (Count VI) and negligence (Count IV).

---

[6] Indeed, Plaintiff failed to disclose any lay or expert witness who would testify to any changes in Plaintiff's emotional or habitual makeup before and after the incident.  *See* ECF No. 106-1.  None of the lay witness are disclosed for this subject matter, and "a treating physician who is not an expert witness pursuant to Rule 26(a)(2) may not provide testimony beyond the scope of [his] treatment of the plaintiff, and the doctor's conclusions must fall within the province of a lay witness." *Jordan v. City of Cleveland*, No. 1:02-cv-1280, 2004 WL 5499506, at *2 (N.D. Ohio Feb. 3, 2004) (internal quotation marks and citation omitted).  Plaintiff failed to list any of her treating physicians as expert witnesses in this case and, therefore, they may not be called to testify to causation.

(4:22CV1811)

### D.  John/Jane Doe Correctional Officers 1 – 5

The Court also dismisses Plaintiff's allegations against John/Jane Doe Correctional

Officers 1 – 5, as service of process, and, by extension the institution of a lawsuit, cannot be

effected on fictitious persons.  *Webster v. Freedom Debt Relief, LLC*, No. 1:10CV1587, 2011

WL 3422872, at *2 (N.D. Ohio Aug. 4, 2011) (Pearson, J.).

### V.  Conclusion

Viewing Plaintiff's probative evidence and all reasonable inferences drawn therefrom in

the light most favorable to Plaintiff, the Court concludes that there is no genuine issue of material

fact and the movants are entitled to a judgment as a matter of law on the remaining

Counts, they are Counts IV, V, and VI.  For the foregoing reasons and those that have been

articulated in the memoranda of the points and authorities on which Defendants rely, Defendants

CoreCivic, Inc. dba Northeast Ohio Correctional Center and Warden David Bobby's Motion for

Summary Judgment (ECF No. 74) is granted.  Final judgment will be entered in favor of

CoreCivic and Bobby and against Plaintiff on the First Amended Complaint (ECF No. 19).


      IT IS SO ORDERED.


   September 30, 2024                  */s/ Benita Y. Pearson*
Date                               Benita Y. Pearson
                                United States District Judge